7 F.3d 236
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Sammie Keith JENKINS, Defendant-Appellant.
 No. 92-6288.
 United States Court of Appeals, Sixth Circuit.
 Sept. 22, 1993.
 
 Before: MARTIN and SILER, Circuit Judges; and WEBER, District Judge.*
 PER CURIAM.
 
 
 1
 Sammie Keith Jenkins, who pled guilty to and was convicted for possessing a firearm in violation of 18 U.S.C. § 922(g)(1), challenges certain aspects of his sentencing. For reasons stated herein, we AFFIRM.
 
 Background
 
 2
 Though Jenkins pled guilty to illegal weapon possession, the events contributing to his federal prosecution involved much more serious criminal behavior. The weapon charge to which Jenkins pled guilty arose from an altercation in Knoxville, Tennessee, between Jenkins and Grady Ellis on January 5, 1991. Allegedly, a group of fighting individuals, which may have included Jenkins, came in contact with Ellis's parked car. When Ellis protested, asking the group to stay away from his auto, Jenkins allegedly became agitated and cursed Ellis. Soon thereafter, as Ellis attempted to enter his car, Jenkins purportedly fired numerous shots at Ellis, striking him once in the shoulder and once in the arm. (Tennessee dropped its initial prosecution of Jenkins after Ellis could not identify him as the perpetrator at a preliminary hearing; Ellis blamed this failure on a change in Jenkins's appearance).
 
 
 3
 Federal authorities eventually commenced a case against Jenkins, who had a prior felony conviction in Tennessee for involuntary manslaughter. The federal case originally featured two weapon possession counts and one § 924(c) (i.e., firearm use during and in relation to a drug offense) count. Ultimately, however, Jenkins pled guilty to possessing a .38 caliber revolver in exchange for dismissal of the other counts. It is the sentence Jenkins received for his offense that is at issue on appeal.[1]
 
 Discussion
 
 4
 Using the Presentence Report, the district court sentenced Jenkins as follows. It started at the guideline section addressing the offense to which Jenkins pled guilty, § 2K2.1 (governing § 922(g) offenses). In pertinent part, that section contains a "cross reference," which at sentencing stated:
 
 
 5
 (1) If the defendant used or possessed any firearm ... in connection with the commission or attempted commission of another offense, ... apply--
 
 
 6
 (A) § 2X1.1 (Attempt, Solicitation, or Conspiracy) in respect to that other offense, if the resulting offense level is greater than that determined above[.]
 
 
 7
 U.S.S.G. § 2K2.1(c)(1)(A). Because the court determined that Jenkins's actions on January 5, 1991, amounted to an assault on Ellis with the intent to kill, and because such an offense would provide a greater offense level than the weapon charge, the court pursued the § 2K2.1 cross reference. Section 2X1.1, the cross-referenced section, does provide offense levels for inchoate crimes. However, that section contains its own cross reference: "When an attempt, solicitation, or conspiracy is expressly covered by another offense guideline section, apply that guideline section." U.S.S.G. § 2X1.1(c)(1). Assault with intent to commit murder has its own guideline section, § 2A2.1. As such, the district court turned to § 2A2.1 for Jenkins's computation, settling on a level of 26, which included a four level increase due to the "permanent or life-threatening bodily injury" the court found Ellis to have suffered.[2]
 
 
 8
 Jenkins's complaints about the above-described process are easily dispatched. Principally, Jenkins argues that the Supreme Court's decision in Braxton v. United States, 111 S.Ct. 1854 (1991), requires reversal. Jenkins maintains that Braxton broadly regulates the extent to which offenses not admitted to by a defendant can impact sentencing. Jenkins is incorrect. Braxton specifically addressed a narrow feature of the guidelines that provides a limited exception to the normal rules of guideline section choice. Normally, the guideline section "most applicable to the offense of conviction" applies. § 1B1.2(a). However, § 1B1.2(a) makes an exception when, inter alia, a conviction obtained by guilty plea "contain[s] a stipulation that specifically establishes a more serious offense than the offense of conviction." Braxton, instead of purporting to announce a decision modifying the entire guideline structure, merely reviewed a district court's application of the § 1B1.2(a) proviso to determine whether a defendant's concessions in pleading, taken to be a stipulation, "specifically establish[ed]" an offense more serious than the one to which the defendant pled guilty.
 
 
 9
 Here, as the Government argues, no similar § 1B1.2 issue appears. The district court did not arrive at the assault with intent to commit murder guideline via the § 1B1.2(a) exception. Rather, it began at the guideline section "most applicable to the offense of conviction," as is the usual case. That section, § 2K2.1, simply contains a cross reference that ultimately led the district court to its sentencing destination. Braxton is irrelevant to this appeal.[3] Though authority specifically evaluating the effect of Braxton is sparse, cases applying the § 2K2.1 cross reference since Braxton have followed customary guideline procedures. See United States v. Hill, 973 F.2d 459, 462 (6th Cir.1992) (limiting review in cross reference situation to whether district court findings are clearly erroneous), cert. denied, 113 S.Ct. 1056 (1993); United States v. Concepcion, 983 F.2d 369, 386-89 (2d Cir.1992) (noting that cross reference applies if supporting facts, derived from "any type of information known" to court, are established by a preponderance of evidence), petition for cert. filed, No. 92-9190 (U.S. June 23, 1993).
 
 
 10
 Although Braxton does not apply, Jenkins additionally presents a limited attack on the factual predicate for application of guideline § 2A2.1 (Assault With Intent to Commit Murder). As noted, the district court's findings on sentencing facts will be upheld unless clearly erroneous. See Hill, 973 F.2d at 462; United States v. Mun, 928 F.2d 323, 324 (9th Cir.1991) (reviewing deferentially for sufficiency of evidence on analogous underlying facts and guideline application). Here, the district court conducted an extensive evidentiary hearing to guide sentencing. At that hearing, the victim specifically identified Jenkins as the person that had shot him. Even if Ellis's testimony were suspect, Officer Ed Mitchell of the Knoxville Police Department, whom the court described as "entirely credible," also described the incident and identified Jenkins as the culprit. The district court did not clearly err in crediting this testimony. Additionally, Jenkins's act--shooting at and hitting Ellis repeatedly--surely exhibits the intent required for an attempt crime. Given the lower proof standard applicable at sentencing and the deference due the deciding court, the predicate existed for application of § 2A2.1.
 
 
 11
 Jenkins also challenges the district court's use of injuries to the victim, Ellis, in sentencing. As noted, § 2A2.1(b)(1) increases a defendant's offense level by 4 "[i]f the victim sustained permanent or life-threatening bodily injury." Ellis received two gunshot wounds from Jenkins, one in the left arm and one through the right shoulder; he spent three days in the hospital as a result of his injuries; and he still suffered numbness in two of his fingers because of the gunshots.
 
 
 12
 The court adjusted Jenkins's offense level by four, finding Ellis's injuries sufficient justification. The guidelines describe the relevant definition as follows:
 
 
 13
 "[p]ermanent or life-threatening bodily injury" means injury involving substantial risk of death; loss or substantial impairment of the function of a bodily member, organ, or mental faculty that is likely to be permanent; or an obvious disfigurement that is likely to be permanent.
 
 
 14
 § 1B1.1, comment. (n. 1(h)). In view of the evidence presented below, the district court did not clearly err in finding that Jenkins inflicted on Ellis a permanent or life-threatening injury.
 
 Conclusion
 
 15
 For the foregoing reasons, the district court's sentence is AFFIRMED.
 
 
 
 *
 The Honorable Herman J. Weber, United States District Judge for the Southern District of Ohio, sitting by designation
 
 
 [1]
 Jenkins received 63 months, which was at the bottom of the 63-78 month range applicable given an offense level of 24 and criminal history category of III
 
 
 [2]
 That adjustment came via § 2A2.1(b)(1)(A), which calls for a four-level increase "[i]f the victim sustained permanent or life-threatening bodily injury." Jenkins's final offense level, 24, reflects a two-level reduction for acceptance of responsibility
 
 
 [3]
 This being so, Jenkins's argument about the proof considered by the district court in sentencing also fails. Jenkins maintains that, per Braxton, an evidentiary hearing to determine guideline applicability was improper. Braxton does limit the § 1B2.1(a) exception inquiry to the "stipulation" contained in a plea; however, that limitation, based as it is on the explicit language of § 1B2.1, obviously does not generally apply to sentencing