**NOT RECOMMENDED FOR PUBLICATION**
File Name: 07a0074n.06

Filed: January 30, 2007

**No. 05-6528**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

TAURUS OGLESBY,

    Defendant-Appellant.

                           /

**ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE**

**BEFORE:** **KEITH and CLAY, Circuit Judges; and MAYS, District Judge.**[*]

    **CLAY, Circuit Judge.** Defendant Taurus Oglesby appeals to this Court the sentencing

decision of the district court, which applied a 4-level enhancement, pursuant to U.S. Sentencing

Guidelines Manual § 2K2.1(b)(5) (2005), to Defendant's sentence for a conviction under 18 U.S.C.

§ 922(g)(1) for being a felon in possession of a firearm. For the reasons set forth below, we

**AFFIRM** the sentence of the district court.

**BACKGROUND**

    On January 23, 2003, the Metro Nashville Police Officers searched the home of Defendant

and his girlfriend Tamika Caruthers, pursuant to a valid search warrant. At the time of the search,

---

    [*]The Honorable Samuel H. Mays, Jr., United States District Judge for the Western District
of Tennessee, sitting by designation.

both Caruthers and Defendant were present. The officers recovered $2,022 in cash on Defendant's person, and a subsequent search of the residence uncovered powder cocaine, crack cocaine, marijuana, and digital scales in various rooms throughout the house. Additionally, three firearms were uncovered in the residence: A loaded Beretta, 9 mm caliber semiautomatic pistol was found in Defendant's bedroom; and a loaded Colt .22 short caliber revolver and a loaded FIE .25 caliber pistol were discovered in the shoe box in the kitchen where the drugs were found. After being Mirandized, Defendant admitted that the drugs and firearms belonged to him. He explained that he bought the Beretta for $150 for protection and that he was holding the Colt for a friend. He also stated that he was going to sell the FIE to another party for $20. Defendant was a convicted felon at the time of his arrest, after having been convicted of possession with intent to sell controlled substances in 1997 and again in 2003. Defendant pled guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924 on January 5, 2005.

At the sentencing hearing, Officer Matthew Howlett testified that the marijuana, cocaine, and the crack cocaine were all found in a Nike shoe box along with the FIE pistol and the Colt revolver. He further testified that both guns were loaded and that the box was found on the kitchen counter. Officer Howlett also testified that he found a set of digital scales outside of the shoe box, and additional digital scales throughout the house, which indicated to him a drug trafficking offense, and that he found the third gun, the Beretta, in Defendant's bedroom. Based on these facts, Defendant's Presentencing Report ("PSR") recommended the imposition of a 4-level sentencing enhancement pursuant to § 2K2.1(b)(5) for possession of a firearm in connection with another felony offense, drug

trafficking.[1]  Defendant objected to this enhancement and argued that there was no proof that the guns were in the house with the intent to be used in connection with the drug offenses.  Defendant further argued that because he had provided explanations, which were wholly unrelated to drug trafficking, as to why he had the guns, he had overcome the government's allegations that the guns were there to facilitate the drug trafficking.  The government responded that because the guns were stored with the drugs, they were possessed in connection with the drug trafficking.  The district court overruled Defendant's objection and applied the enhancement.

Defendant additionally introduced evidence aimed at showing his efforts at rehabilitation.  Defendant testified at the sentencing hearing that since his arrest, he voluntarily enrolled in and completed the Lifelines program, which is a correctional program offered at the Davidson County Correctional facility.  Defendant called Bobby Aylward ("Aylward"), supervisor of Lifelines, to testify about the program.  Aylward was unable to confirm that Defendant had enrolled in the Lifelines program voluntarily, nor could he testify as to Defendant's level of participation in the program because he did not work with Defendant.

Defendant was subsequently sentenced to 120 months in prison, which was the maximum statutory sentence and the minimum sentence according to the advisory sentencing guidelines range.  In determining that this sentence was appropriate, the district court stated, "I think the advisory

---

[1]Importantly, all that is required for this enhancement is a felonious offense or act; a conviction or even a charge need not arise out of the felonious act.  Accordingly, the fact that drugs were uncovered can support this enhancement being applied even though there was no actual drug charge.  "Felony offense, as used in subsection (b)(5), means any offense (federal, state, or local) punishable by imprisonment for a term exceeding one year, whether or not a criminal charge was brought, or conviction obtained."  U.S. Sentencing Guidelines Manual § 2K2.1 cmt. n.4 (2005).

guideline range is appropriate based on your long-term history of drug-dealing and acts of violence, and it is needed to protect the public." (J.A. at 78). Defendant filed timely Notice of Appeal.

## DISCUSSION

**I.     The district court properly applied a 4-level enhancement, pursuant to U.S. Sentencing Guidelines Manual § 2K2.1(b)(5) to Defendant's sentence**

### 1.     Standard of Review

The Supreme Court in *Buford v. United States*, 532 U.S. 59 (2001), held that where an appellate court reviews a district court's application of law to undisputed facts in a sentencing case, the appellate court should give "due deference" to the lower court's application of the law to the facts. *Id*. at 64-65. This Court analyzed that holding in *United States v. Hardin* and concluded that the application of the phrase "in connection with" in § 2K2.1 to undisputed facts should receive deferential rather than de novo review. 248 F.3d 489, 493 (6th Cir. 2001). Since then, this Court has consistently held that due deference is the appropriate standard for "the district court's determination that [a] U.S.S.G. § 2K2.1(b)(5) enhancement applies." *United States v. Burke*, 345 F.3d 416, 427 (6th Cir. 2003).

### 2.     U.S. Sentencing Guidelines Manual § 2K2.1(b)(5)

Section 2K2.1(b)(5) states: "If the defendant used or possessed any firearm or ammunition in connection with another felony offense . . . increase by 4 levels." This Court has adopted the rule promulgated by the Eighth Circuit that the "in connection with" requirement of § 2K2.1(b)(5) "'should be construed as equivalent to the 'in relation to' language of 18 U.S.C. § 924(c)." *Hardin*, 248 F.3d at 497(quoting *United States v. Regans*, 125 F.3d 685, 686 (8th Cir. 1997)). Accordingly,

"the firearm must have some purpose or effect with respect to the drug trafficking crime; . . . the gun at least must facilitat[e] or ha[ve] the potential of facilitating the drug trafficking offense." *Id.* at 497-98 (internal quotation marks and citations omitted).

### 3. The Fortress Theory

To determine whether a firearm can be said to facilitate the offense, this Court has adopted the "fortress theory." This theory "holds that if it reasonably appears that the firearms found on the premises controlled or owned by a defendant and in his actual or constructive possession are to be used to protect the drugs or otherwise facilitate a drug transaction, then such firearms are used 'during and in relation to a drug trafficking crime.'" *United States v. Henry*, 878 F.2d 937, 944 (6th Cir. 1989) (quoting § 924(c)).

There still exists some confusion regarding the status of the fortress theory after the Supreme Court's decision in *Bailey v. United States*, 516 U.S. 137, 148 (1995). In that case, the Court concluded that in order to prove a violation of the "use" prong of § 924(c), the government had to be able to show "active-employment" of the firearm. *Id.* Importantly, the Court was construing *only* the "use" prong of the statute. This Court further clarified that its holding was intended to have no effect on the possession prong in the sentencing guidelines. *See United States v. Covert*, 117 F.3d 940, 947 (6th Cir. 1997) ("[T]he term 'possess' used in sentencing guideline sections, such as 2K2.1(b)(5), sweeps more broadly than the word 'use.'") (citing *Bailey*, 516 U.S. at 147) (footnote omitted). Thus, we may, with complete consistency, apply the fortress theory to § 2K2.1(b)(5) cases. *See, e.g.*, *Hardin*, 248 F.3d at 497; *Covert*, 117 F.3d at 947.

Essentially, the fortress theory asks whether there exists a nexus between the drugs and the guns to support the application of the enhancement. A nexus refers to more than mere proximity. We have explained that "the presence of drugs in a home under a firearm conviction does not *ipso facto* support application of a § 2K2.1(b)(5) enhancement." *Hardin*, 248 F.3d at 501. Proximity *may* support a finding of "in connection with," but we have declined to hold that mere physical proximity would always support this finding. *Id*. at 497. Instead, we have relied not just on the proximity between the guns and the underlying felonious offense, but also on whether there was "easy access," which would support a theory that the guns were used to facilitate the felonious offense. *Id*. at 498-99. ("The fact that the firearm was found in the same room where the cocaine was stored can lead to the justifiable conclusion that the gun was used in connection with the felony.") (footnote omitted).

### 4.    Application of the Fortress Theory

In the present case, the drugs were found in the same shoe box as two of the firearms. The box was found "in the open" on the kitchen counter. (J.A. at 44). While proximity may not be dispositive, it is certainly indicative of a connection between the guns and the drugs. *Hardin*, 248 F.3d at 498. The fact that they were being stored together supports the theory that the guns were there to protect the drugs, and, thus, were used in connection with them.

Defendant argues that this theory is undermined by the fact that the guns were found at the bottom of the box beneath the bags of drugs. In order to use the guns, Defendant contends, he would have had to dig past the drugs to get to where the guns were being stored. According to Defendant, this is not the type of "easy access" the *Hardin* court envisioned. We are unpersuaded by this

argument. Stripped to its essence, Defendant's argument is that the "in connection with" prong requires more accessibility than the facts of this case indicate existed. We must, however, give due deference to the district court's application of a legal principle to undisputed facts. *Id*. at 493. Without any facts indicating that storing the guns at the bottom of a shoe box rendered them incapable of being used in connection with the drug trafficking, we will not reverse the district court's decision. In order to assess the merits of Defendant's argument, we would need to engage in a factual analysis, requiring us to weigh how long it might take Defendant to retrieve the guns and decide whether that time frame undermines a theory that the guns were being used in connection with the drug offense. *See United States v. Hill*, 973 F.2d 459, 462 (6th Cir. 1992) (holding that a district court's conclusion regarding what constitutes ready accessibility must be afforded deference). The factual circumstances of the instant case do not necessitate such an inquiry.

We are equally unpersuaded by Defendant's argument that because he has given alternative explanations for the presence of these guns, he has successfully discredited the inference that the guns were being used to facilitate a drug offense. This is wholly without merit because an alternative explanation for the presence of a gun does not preclude that gun from *also* being used to facilitate a drug offense. *See Hardin*, 248 F.3d at 498 (holding that a firearm could be used both to protect the defendant's wife and to facilitate the defendant's drug trafficking activities). Accordingly, we find no error with the district court's imposition of the 4-level enhancement to Defendant's sentence.

**II.     The district court's imposition of a 120-month prison sentence was reasonable**

      **1.     Standard of Review**

"After *Booker*, which rendered the Sentencing Guidelines advisory for all criminal cases, district courts have enhanced discretion in the sentencing of criminal defendants. Ultimately, however, *Booker* requires that the sentence imposed by the district court be reasonable." *United States v. Jackson*, 408 F.3d 301, 304 (6th Cir. 2005) (citing *Booker*, 543 U.S. 220, 260 (2005)). Reasonableness is assessed in two ways: procedurally and substantively. *United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005).

In determining procedural reasonableness, we review "the factors evaluated and the procedures employed by the district court in reaching its sentencing determination." *Id*. Specifically, we ask whether the district court "fail[ed] to 'consider' the applicable Guidelines range or neglect[ed] to 'consider' the other factors listed in 18 U.S.C. § 3553(a), and instead simply select[ed] what the judge deem[ed] an appropriate sentence without such required consideration." *Id*. (footnote omitted). A district court is not duty-bound to recite each § 3553 factor and analyze it in order for this Court to conclude that the sentence is procedurally reasonable. The court must, however, "provide a reasoned explanation for its choice of sentence and its explanation must be sufficiently thorough to permit meaningful appellate review." *United States v. Blackwell*, 459 F.3d 739, 773 (6th Cir. 2006). In determining substantive reasonableness, we review a sentence and assess whether the length is reasonable in light of the § 3553 factors. *United States v. Yopp*, 453 F.3d 770, 774 (6th Cir. 2006). "[A] district court's mandate is to 'impose a sentence sufficient, but not greater than necessary to comply with the purposes set forth in [§ 3553(a)(2)].'" *Id*. (quoting § 3553(a)). We have held that we will "credit[] sentences properly calculated under the Guidelines with a rebuttable presumption of reasonableness," as long as the Guidelines are not weighted

substantially more than other § 3553(a) factors. *United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006). In other words, where a sentence falls within the appropriate range under the sentencing guidelines, the burden shifts to the defendant to show that the length of the sentence is unreasonable in light of the § 3553 factors. *United States v. Harden*, 2006 U.S. App. LEXIS 21169, *16 (6th Cir. August 16, 2006) (unpublished). The sentence must be objectively unreasonable in light of the factors; this Court will not overturn a district court's sentence merely because we would have weighed the § 3553 factors differently. *Yopp*, 453 F.3d at 774.

## 2. Procedural reasonableness

Importantly, the presumption of reasonableness does not apply to our review for procedural reasonableness. "[T]he presumption of reasonableness does not 'mean that a guidelines sentence will be found reasonable in the absence of evidence in the record that the district court considered all of the relevant section 3553(a) factors.'" *Blackwell*, 459 F.3d at 773 (quoting *United States v. Foreman*, 436 F.3d 638, 644 (6th Cir. 2006)).

A district court must consider the applicable Guidelines range and the other factors listed in § 3553(a) in order to select a procedurally reasonable sentence. *Jackson*, 408 F.3d at 305. This Court has held that while there is no requirement that a district court's decision involve a "ritualistic incantation of the § 3553(a) factors it considers," the district court's opinion needs to contain enough detail to reflect the court's consideration of these factors and to facilitate our review. *United States v. Chandler*, 419 F.3d 484, 488 (6th Cir. 2005) (citation omitted). We may reverse a sentence only if we are not persuaded by the record that the court properly considered the § 3553 factors, not merely because we would have weighted the factors differently. *Jackson*, 408 F.3d at 305.

9

In the present case, the district judge listed the § 3553(a) factors he considered in determining Defendant's sentence. Specifically, the court stated, "I think the advisory guideline range is appropriate based on your long-term history of drug dealing and acts of violence, and it is needed to protect the public." (J.A. at 77). The court further concluded that the sentence should be accompanied by a supervised release with several special conditions, including ordering Defendant to participate in a substance abuse program, an adult education program, and a mental health program. (J.A. at 77). Therefore, the record reflects the court's consideration of the nature of the offense, Defendant's criminal history, and a desire to protect the public, all of which are § 3553(a) factors. 18 U.S.C. § 3553(a)(1)-(2)(C). Further, the record reflects that the court considered the need to provide Defendant with educational training and medical and correctional treatment. Section 3553(a) additionally provides for such considerations. 18 U.S.C. § 3553(a)(2)(D). Defendant's argument that the district court did not sufficiently consider the § 3553 factors is unpersuasive. There is no magic number of factors that must be considered in order to yield a procedurally reasonable sentence. As long as the record makes it possible for this Court to conduct a meaningful review, the district court need not recite each § 3553 factor. *Chandler*, 419 F.3d at 488. Because the district court's opinion was sufficiently specific with respect to the factors considered, we conclude that Defendant's sentence is procedurally reasonable. Defendant's sole remaining argument is that, given the mitigating evidence submitted at the sentencing hearing, he should have been given a lower sentence. This is not properly viewed as an argument about procedural reasonableness. Accordingly, we will construe this argument as an attack on the sentence's substantive reasonableness.

3.      **Substantive Reasonableness**

As we have stated above, this Court credits sentences that fall within the appropriate guideline range with a rebuttable presumption of reasonableness. *Williams*, 436 F.3d at 708. The burden then falls on the defendant to argue that the trial court has imposed an unreasonable sentence.

In the present case, the appropriate guideline range for Defendant's conviction was 120 months to 150 months, but the statutory maximum for Defendant's offense was 120 months. Thus, while 120 months represented the highest sentence Defendant could have received, it still fell within the appropriate guideline range. Accordingly, based upon the factors taken into account by the district court, we afford the sentence a presumption of reasonableness. The burden is on Defendant to point to facts that show this sentence was "greater than necessary to comply with the purposes set forth in [§ 3553(a)(2)]." *Yopp*, 453 F.3d at 774 (internal quotation marks omitted). Defendant offers no facts to rebut the presumption of reasonableness. As the district court noted, Defendant's offense level was 27, and he had a Category V Criminal History. The district court also pointed out that Defendant had a "long-term history of drug dealing and acts of violence." (J.A. at 77). These factors, taken into consideration with the discretion we afford a district court's sentencing decision, indicate that the sentence was substantively reasonable.

Defendant argues that, in light of the mitigation evidence he presented, the court's decision to apply a 120-month sentence was unreasonable. Specifically, Defendant argues that his voluntary participation in the Lifelines program should weigh in favor of his receiving a lower sentence. Because the district court did not engage in an on-the-record consideration of this specific argument, Defendant contends that his sentence was unreasonable. As this Court has held, "[w]here a

defendant raises a particular argument in seeking a lower sentence, the record must reflect both that the district judge considered the defendant's argument and that the judge explained the basis for rejecting it," *United States v. Richardson*, 437 F.3d 550, 554 (6th Cir. 2006).

Despite this language, we conclude that the facts of this case render such consideration of Defendant's mitigation argument unnecessary. Defendant's mitigation defense was woefully unsupported, because he chose to call a witness who did not actually work with him in the Lifelines program and could not testify as to the nature of his involvement or whether his involvement was voluntary. Because the mitigation value of a post-offense treatment program is derived from a defendant's choice to voluntarily participate, it is important that a defendant be able to demonstrate that such participation was voluntary. *See United States v. Maddalena*, 893 F.2d 815, 817 n.1 (6th Cir. 1989). In this case, the district court was essentially presented with an averment that Defendant voluntarily participated in this program with nothing but Defendant's own word to substantiate it. Further, the record is silent with respect to any specific information about Defendant's participation in the program inasmuch as Aylward, the sole witness called, was only able to talk about the program in general and knew nothing of Defendant's involvement. The district court's failure to engage in an on-the-record consideration of such a cursorily presented mitigation defense does not render this Court incapable of reviewing the district court's decision. The district court is not required to discuss every single mitigation factor raised by a defendant, nor to engage in a "ritualistic incantation" of the § 3553 factors. *Chandler*, 419 F.3d at 488; *see also*, *United States v. Jones*, 445 F.3d 865, 871 (6th Cir. 2006) (holding that "a sentence within the applicable Guidelines range should not lose its presumption of reasonableness whenever a district judge does not explicitly

12

address every defense argument for a below-Guidelines sentence"). Thus, we conclude that the district court's failure to consider this argument on the record does not affect the reasonableness of the sentence.

Defendant's argument amounts to a contention that the district court erred in its consideration of the sentencing factors and that it should have come out a different way. Our role in reviewing the district court's sentence for substantive reasonableness is not to substitute our discretion for that of the district court. *Williams*, 436 F.3d at 706. We may only disturb the sentencing decision of the district court in the face of facts that illustrate objectively that the sentence was longer than necessary to effectuate the goals of § 3553(a)(2) and, thus, unreasonable. *Yopp*, 453 F.3d at 774. Because Defendant can point to no such facts, we conclude that the sentence was substantively reasonable.

For the forgoing reasons, we **AFFIRM** the district court's sentencing order.