File Name: 07a0281n.06
Filed: April 19, 2007

**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

**NO. 05-2217**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | **APPEAL FROM THE DISTRICT** |
| | ) | **COURT FOR THE WESTERN** |
| **v.** | ) | **DISTRICT OF MICHIGAN** |
| | ) | |
| **MARY ELIZABETH BURTON,** | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | |

---

**BEFORE: MARTIN and CLAY, Circuit Judges; and POLSTER, District Judge.**[*]

**Dan Aaron Polster, District Judge.** Defendant Mary Elizabeth Burton was convicted by a jury of one count of bank fraud in violation of 18 U.S.C. § 1344, and two counts of uttering counterfeit checks in violation of 18 U.S.C. §§ 513(a) and (c). The district court sentenced Burton to 33 months incarceration on each count, to be served concurrently. On appeal, Burton argues that the sentence is unreasonable because the district court did not sentence her to home confinement or a sentence below the advisory Guidelines range given her age (65) and infirmities. For the following reason, the sentence is **AFFIRMED**.

**I.**

In May 2004, Burton deposited two counterfeit checks in her credit union account, one for

---

[*]The Honorable Dan Aaron Polster, United States District Judge for the Northern District of Ohio, sitting by designation.

$79,968.53 and one for $98,987.61. Between May 25, 2004 and June 1, 2004, she withdrew cash totaling $147,793. On June 1, 2004, Burton attempted to deposit a third counterfeit check in the amount of $99,963.27, but she took the check back when bank personnel told her they would have to verify it. When questioned by bank personnel about the source of the checks, Burton variously explained that they were sweepstakes winnings, pennies from heaven, proceeds from a catering job, insurance funds, and a settlement check from a previous marriage.

Following her conviction by a jury of one count of bank fraud and two counts of uttering counterfeit checks, the United States Probation Office prepared a presentence investigation report ("PSR"). The PSR stated that the base offense level for Burton's three offenses was 7 under U.S.S.G. §§ 2B1.1(a), 3D1.2(d). Based on an attempted loss amount of $278, 919.41, the PSR recommended, pursuant to U.S.S.G. § 2B1.1(b)(1)(G), a 12-level enhancement to the base offense level, resulting in an adjusted offense level of 19. With a criminal history category of II, the PSR calculated an applicable Guidelines sentencing range of 33 to 41 months, and recommended that Burton be sentenced to the middle of that range, or 37 months on each count, to be served concurrently. The Physical Condition section of the PSR quoted a letter that Burton had provided on Saint Mary's Mercy Medical Center letterhead, which is quoted below without corrections:

> This letter is in reference to Ms. Mary Burton + her current health condition. She has a longstanding history of HTN, atrial fibrillation, anxiety, diabetes, carpel tunnel syndrom, cervical arthritis, lumbar spondylosis with herniated disk with nerve impingement. In addition Mrs. has had two witnessed episodes of loss of conscinsnes. Most recently 5,25,05, in which she was hospitalized overnight. Her care is under the close supervision of myself as well as involvement by a Neurologist, Neuro Surgeon, Cardiologist + a pending evaluation by a behavior therapist and pain management specialist. It is necessary for her to be seen by myself or one of the anther specialist on at least a weekly basis. She has a history of claustrophobia in which she requires intravenous sedation for MRI's + radiological procedures. It has also be recommended that she have special mattrin/hospital bed placed in the home. In addition she is the sole provider + care taker for her elderly mother in term of medicine and administration + care.

Notwithstanding this letter, Burton's list of medications and allergies and a family history of heart disease, the PSR did not recommend a downward departure or variance for health reasons.

At the sentencing hearing, the court agreed with the PSR calculations and concluded that the applicable advisory Guidelines range for Burton's crimes was 33 to 41 months. In so concluding, the court overruled Burton's objections to the loss amount – a ruling she does not challenge on appeal.[1]

Burton requested home incarceration or a below-Guidelines sentence due to her advanced age and poor health under 18 U.S.C. § 3553(b).[2] Defense counsel reminded the court that Burton had collapsed during the trial and had to be taken to the hospital. He reported that she had recently undergone surgery, and that she suffered from a blood sugar imbalance, an anxiety disorder and a deteriorating lower back condition that might necessitate additional surgeries. Other than the above-quoted letter provided to the probation officer for the PSR, however, Burton presented no additional documentary evidence to support her request for home confinement or a variance based on her age and infirmities.

The government argued that the Guidelines specifically addressed age and health, and that the evidence Burton provided to the court was insufficient to support a downward departure for age

---

[1]The district court rejected Burton's arguments that she should be credited for any loss recovered by the credit union from its insurance carrier, and that the correct enhancement should be 10 levels, under § 2B1.1(b)(1)(F), for attempted loss over $120,000 (based on the two checks that were actually deposited).

[2]Defense counsel conceded at the hearing that Burton's age alone did not justify a downward departure.

or health under *United States v. Bostic*, 371 F.3d 865 (6th Cir. 2004) and *United States v. Tocco*, 200 F.3d 401 (6th Cir. 2000).

After entertaining counsel's arguments, the district court stated:

> I am concerned about the cost of incarceration of Ms. Burton. It's an enormous cost for a healthy person, much less for someone that presents, at least orally, the conditions that Ms. Burton says she has. . . .

> But taking a look at the guidelines and considering the guideline range, the nature and circumstances of the offense and history characteristics of the defendant, I've gone over the criminal history category, the prior offense that I mentioned of forgery, which was in 1994, not that long ago really, in my judgment at least, and the fact that she fails to take any kind of responsibility and still presents excuses and blames it on others, actually, that she was convicted of the offense here, which her credibility is nonexistent in that area, that she would get about $250,000 for nothing and then not question this.

> \*          \*          \*

> Any kind of these bank frauds are always very serious. It's not only the money involved. It's the breach of trust between a customer and the bank. In this particular case, the two people who trusted her most are shortly thereafter gone from the bank. And there wasn't any real evidence that I can remember that it was because of this, but it would have been an appropriate act on behalf of the bank to terminate the people if they did do it, because they violated the bank's own policies regarding putting holds on these particular checks.

> And, because of her attitude, I'm wondering whether or not she would do this again, given the chance. And, therefore, the public needs protection. I think a sentence within the guideline range is appropriate.

> Regarding her health, the Bureau of Prisons presents a lot of opportunities or a lot of healthcare. I mean, if she couldn't afford healthcare before - - there is even cartoons about this, and I don't mean to minimize this at all. But you do get healthcare within the prison system.

> The sentencing range, I think, takes care of all of the provisions of 18 U.S.C. Section 3553(a). I don't like the cost of incarceration, but I don't know what other steps to take considering the other factors in 18 United States Code 3553(a) and the sentencing guidelines.

With further respect to Burton's physical condition, the court quoted the relevant advisory

Guidelines section:

> Physical condition or appearance, including physique, is not ordinarily relevant in determining whether a departure may be warranted. However, an extraordinary physical impairment may be a reason to depart downward; e.g., in the case of a seriously infirm defendant, home detention may be as efficient as, and less costly than, imprisonment.

U.S.S.G. § 5H1.4. The court concluded, "Here, the 'efficient as' is not met." With this, the court sentenced Burton to three concurrent prison terms of 33 months followed by 5 years of community control, and ordered her to pay $147,793 in restitution and a $300 special assessment. The court recommended that the Bureau of Prisons ("BOP") evaluate Burton to determine if she suffers from a mental or emotional condition. The court also recommended that the BOP pay careful attention to the PSR regarding Burton's condition and encouraged Burton's counsel to provide additional medical records to the BOP.

## II.

Because the Sentencing Guidelines are no longer mandatory under *United States v. Booker*, 543 U.S. 220 (2005), the district court is bound by the mandate of 18 U.S.C. § 3553(a) in fashioning a sentence. *United States v. Collington*, 461 F.3d 805, 808 (6th Cir. 2006) (citing *United States v. McBride*, 434 F.3d 470, 476 (6th Cir. 2006)). Section 3553(a) requires a sentencing court to consider, first, the nature and circumstances of the offense and the history and characteristics of the defendant. 18 U.S.C. § 3553(a)(1). The court must impose a sentence "sufficient, but not greater than necessary" to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, to protect the public and to provide the opportunity for defendants to rehabilitate themselves through educational or vocational training, medical care and/or other treatment. 18 U.S.C. § 3553(a)(2). The court must consult the Guidelines for an applicable sentencing range, consider the kinds of sentences available and any pertinent policy statement issued by the Sentencing Commission. 18 U.S.C. §§ 3553(a)(3)-(5). Finally, the court

must consider the need to avoid unwarranted sentence disparities and to provide restitution. 18 U.S.C. §§ 3553(a)(6)-(7).

Once a district court imposes a sentence it deems appropriate under § 3553(a), we must determine whether the sentence is a reasonable application of that section. *United States v. Jackson*, 408 F.3d 301, 305 (6th Cir. 2005). For us to conduct a meaningful reasonableness review of the sentence, the district court must clearly articulate the reasons for the sentence imposed. *Id.*; 18 U.S.C. § 3553(c). Our review contains both substantive and procedural components. *United States v. Davis*, 458 F.3d 491, 495 (6th Cir. 2006) (citing *United States v. Webb*, 403 F.3d 373, 385 (6th Cir. 2005)). We have held that a sentence is procedurally unreasonable if the district court failed to appreciate the non-mandatory nature of the Guidelines, correctly calculate the Guidelines range, or independently consider and apply the § 3553(a) factors. *Davis*, 458 F.3d at 495 (citations omitted). The district court is not, however, "duty-bound to recite each § 3553(a) factor and analyze it in order for this court to conclude that the sentence is procedurally reasonable." *United States v. Oglesby*, No. 05-6528, 2007 WL 247890 at *4 (6th Cir. Jan. 30, 2007); *see also Collington*, 461 F.3d at 809; *United States v. Leonard Williams*, 436 F.3d 706, 708-09 (6th Cir. 2006). We have defined a substantively unreasonable sentence as one which the district court selects arbitrarily, is based on impermissible factors, does not take into account the § 3553(a) factors or places an unreasonable amount of weight on any one factor. *Collington*, 461 F.3d at 811. While calculation of the applicable Guidelines range is only one of numerous factors the district court must consider when determining a reasonable sentence, we have also held that a sentence properly calculated under the Guidelines is accorded a rebuttable presumption of reasonableness. *Leonard Williams*, 436 F.3d at 708 (6th Cir. 2006).

The record shows that the district court correctly calculated the appropriate advisory Guidelines range. After listening to counsel's argument regarding Burton's infirmities and reading the relevant Guidelines provision for health departures, the court rejected Burton's arguments and declined to depart or vary from the applicable sentencing range. The court was influenced by Burton's 1994 conviction for forgery at age 55, for which she served a two-year prison sentence, and her unrepentant attitude. The court expressed concern that Burton would do this again, given the chance. The court considered the seriousness of Burton's crimes, both the dollar loss to the Credit Union and the fact that two employees lost their jobs as a result of her offenses. The district court concluded that Burton could get adequate care at the BOP.

On appeal, Burton argues that district courts are allowed to depart from the Guidelines range if there exist "mitigating circumstances of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission" that should result in a sentence different from that described, citing *Koon v. United States*, 518 U.S. 81 (1996) (quoting 18 U.S.C. § 3553(b)). Further, "[u]nder *Koon* and taking into account the purposes of sentencing set forth in 18 U.S.C. 3553, the history and characteristics of Ms. Burton (i.e., a 65-year old great-grandmother with a litany of health problems) and the kinds of sentencing, home incarceration should have been the sentence given to Ms. Burton."

In *Koon*, the U.S. Supreme Court explained that, while § 3553(b) authorizes district courts to depart from the applicable Guidelines range in cases that feature aggravating or mitigating circumstances, district courts are "not left adrift." *Id*., 518 U.S. at 94. "The Commission provides considerable guidance as to the factors that are apt or not apt to make a case atypical, by listing certain factors as either encouraged or discouraged bases for departure." *Id*. Discouraged factors

are those "not ordinarily relevant to the determination of whether a sentence should be outside the applicable guideline range." *Id.* at 95 (quoting U.S.S.G. ch. 5, pt. H, intro. comment).

The Guidelines generally discourage the consideration of age and physical condition in determining a reasonable sentence. *Bostic*, 371 F.3d at 875 (citing U.S.S.G. §§ 5H1.1 and 5H1.4). Moreover, the Guidelines suggest that only "in exceptional cases" should the court consider such circumstances. U.S.S.G. ch. 5, pt. H, intro. comment; *cf. Koon*, 518 U.S. at 95*; Bostic*, 371 F.3d at 875. Of course, "[a]fter *Booker*, . . . the fact that a factor is discouraged or forbidden under the guidelines does not automatically make it irrelevant when a court is weighing statutory factors apart from the guidelines." *United States v. Husein*, 478 F.2d 318, 326 (6th Cir. 2007) (quoting *United States v. Aitoro*, 446 F.3d 246, 255 n.9 (1st Cir. 2006)). Nevertheless, § 3553(a)(5) requires that the district court consider applicable policy statements issued by the Sentencing Commission, and the Guidelines' disfavored view towards age and physical condition is, therefore, relevant to our reasonableness review.

The record shows that the district court considered Burton's evidence, the arguments of counsel and the relevant Guidelines provisions before declining to grant Burton a health departure. The only evidence of Burton's numerous conditions other than her unsupported assertions was a letter presented to the probation officer, written on hospital letterhead and not attributable to any physician. The letter is so riddled with misspellings and grammatical errors that its authenticity is in doubt. On this record, Burton cannot demonstrate that the district court acted in a substantively or procedurally unreasonable manner by failing to sentence her below the applicable Guidelines range.

In short, we find that Burton's sentence passes reasonableness review. It is procedurally reasonable because the district judge correctly calculated the advisory Guidelines sentencing range,

considered the availability of Guidelines departures and independently applied the § 3553(a) factors. *Davis*, 458 F.3d at 495. It is substantively reasonable because it was not selected arbitrarily or based on impermissible factors – nor does it reflect that the district judge placed an unreasonable amount of weight on any one § 3553(a) factor. *Collington*, 461 F.3d at 811. Finally, the sentence is presumptively reasonable because it is within the applicable Guidelines sentencing range, and Burton has failed to rebut that presumption with evidence or persuasive argument. *Leonard Williams*, 436 F.3d at 408.

## V.    CONCLUSION

For these reasons, we **AFFIRM** Burton's sentence.